**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| RICHARD GAMINO, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-13-1779 |
| § | |
| TRANSWESTERN, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION**

On December 15, 2011, the plaintiff, Richard Gamino, was allegedly injured when the doors of a freight elevator maintained by Schindler Elevator Corporation closed prematurely. Gamino was using the freight elevator to move a cart loaded with packages from the first floor to the basement. He backed his cart into the freight elevator so that when he reached the basement, he could push (rather than pull) his cart out. He contends that when he backed into the elevator and crossed the infrared-sensor at the elevator-door threshold, the door failed to reopen and instead continued closing and hit the side of his head. A security camera made a video recording that is part of the record.

In April 2013, Gamino sued Schindler and Transwestern, the property-management company, in Texas state court, alleging negligence. (Docket Entry No. 1-2, at 3). Gamino nonsuited Transwestern, which shared Gamino's Texas citizenship, and Schindler timely removed to federal court on the basis of diversity jurisdiction. (Docket Entry No. 1). After discovery, including designating experts and submitting liability reports, Schindler moved for summary judgment, arguing that there was no evidence that the elevator malfunctioned or that Schindler negligently

maintained it. (Docket Entry No. 31). Gamino responded, and Schindler replied. (Docket Entry Nos. 33, 34). Based on the motion, the briefs, the pleadings, the record, and the applicable law, the court denies Schindler's motion. The reasons are explained below.

## I.     The Legal Standard for Summary Judgment

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine[dispute] of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine dispute as to any material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). A dispute "is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant

must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Little*, 37 F.3d at 1075 (citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**II. Analysis**

The Texas-law elements of negligence are that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; and (3) the defendant's breach proximately caused the plaintiff injury. *IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003). Schindler argues that Gamino cannot provide "any evidence to support the second element," that Schindler breached its duty of care. (Docket Entry No. 31-2). In response, Gamino points to the report of his designated witness on liability, Sheila Swett, who has spent 30 years in the elevator business, owns an elevator consulting and engineering firm, and has served as an expert witness in 14 cases involving alleged elevator malfunctions. (Docket Entry Nos. 33; 33-1; 33-2, at 2-3). Swett reviewed the video recording and examined the American Society of Mechanical Engineers ("ASME") Safety Code for Existing Elevators and Escalators. (Docket Entry No. 31-6). Swett concluded that the elevator doors exceeded the Code's maximum average and actual closing speeds, including the Code's average and actual closing speed for reopening after beginning to close before the person entering the elevator is fully inside. (*Id.*). Swett also concluded that the elevator door's reopening device was not adjusted or maintained to function as the Code required. (*Id.*).

Schindler does not challenge Swett's qualifications under Federal Rule of Evidence 702. Schindler argues that Swett testified in her deposition that on the day she inspected the elevator, it "closed in a code compliant fashion, and the door re-opening device operated correctly on that day." (Docket Entry No. 31-8, at 3-4). Swett inspected the elevator on November 17, 2014, several years after the incident. Swett testified in her deposition that, based on her review of the video recording of the incident, the elevator door hit Gamino because its speed and its reopening device did not comply with the ASME code's requirements. Swett testified as follows:

> Q: All of your knowledge about the accident comes from watching the video?
> A: Yes.
> Q: Okay. Are there any documents you need to satisfy yourself as to an opinion on this case?
> A: We have maintenance, preventive maintenance documents, a little bit, and, I mean, that is all I can look at really.
>
> . . . .
>
> Q: Can you describe for me what you think happened on this day, the day of the accident?
> A: Mr. Gamino pulled a load onto the elevator, and the elevator door began closing and struck him. I believe that he hit the reopening device, and it did not reopen in the time that's required to reopen.
> Q: You believe he hit that reopen device?
> A: Not hit, like physically, but he crossed the light ray, and it did not reopen in the time that it was supposed to reopen.
> Q: And that's based on what?
> A: Visual.
> Q: So, you believe he broke the --
> A: He broke the light ray.
> Q: He broke the light ray, and it didn't reopen in time?
> A: In time, correct.
> Q: And that's based on your viewing the video?
> A: Yes.

Q: At what point—how far was the door from him when he broke the beam?
A: It appeared to hit him at about a foot. I think at that point he was in that beam, certainly in that beam.
Q: What do you mean that he was about a foot?
A: I mean, the doors closed. It appeared to be approximately a foot, and that's when it hit him.
Q: So, you think the doors had closed one foot before he broke the beam?
A: I think the doors had closed and did not retract when he broke that beam.
Q: How close was the doors to him when he broke the beam?
A: I would—that would be supposition. I would say about 3 [inches]. He certainly appeared to have broken the beam, and the doors did not retract in time.

. . . .

Q: At what point are the doors supposed to—once a beam is broken, how long—I think the door has already traveled some just because of their size, right?
A: Right.
Q: How far would they travel?
A: Our code says they're not supposed to hit people. I mean, that's its definition is that they will return before they strike. So, according—I mean, they have to be set in accordance with whatever size doors you have.

. . . .

Q: So, you think once he broke the beam, the doors are about 3 [inches] from him?
A: Uh-huh.
Q: And you believe that they should retract and the doors should stop immediately when the beam is broken?
A: I believe that the doors, when an obstruction is sought, should stop before it hits anything.  That's what the code says.
Q: And it didn't?
A: It doesn't give you a leeway of it can travel 6 [inches], or it must stop instantaneously.  It merely states that it cannot contact. It is a passive device.

. . . .

Q: What could have caused this incident?
A: Like I said, it could be an intermittent problem. It could also be a door

      operator problem. It could be a communication problem.

. . . .

Q:     Okay. Mr. Donnelly says that the elevator door was being properly maintained and adjusted. Do you agree with that?

A:     I agree it hit that man on that day, and something happened. I can only go by what I saw.

Q:     That's all you can say is that door hit him?

A:     Yes. According to our code and our requirements, it should not contact.

Q:     But there can be instances when it can contact you even though it's being properly maintained?

A:     There's not supposed to be. Honestly, it is not supposed to be. If you hit the door or if you walk into an elevator and break the beam and hit the door, because many older are accustomed to the bumpers, the old reopening devices, and I see them do it all the time. They contact the door. I did not see that happening in this case.

. . . .

Q:     So, it's your opinion that Schindler did not properly maintain the door reopening device as evidenced by the fact that he was struck by the door?

A:     Correct.

Q:     And you believe he broke the beam?

A:     I believe he broke the beam.

. . . .

Q:     So, the door, it's your opinion that; the door reopening device was not operating properly due to the adjustment?

A:     Was not adjusted to open as quickly as required.

Q:     So, it may not have been adjusted to code?

A:     The code says it can't hit anybody.

. . . .

Q:     Okay. And it's your opinion that the door reopening device was not properly maintained?

A:     Yes. It was not functioning in accordance to code. So, it's their responsibility to maintain equipment functions within the parameters of code.

Q:     Okay. So, I think I'm getting an understanding of your opinions. It's your contention that the door reopening device was not functioning within the code, and it was Schindler's responsibility?

| | | |
|---|---|---|
| A: | Yes. | |
| Q: | And it's your opinion that Schindler did not properly maintain the door reopening device to code? | |
| A: | Right, as a system. I mean, the door reopening device talks to the door operator, which is what makes the speed happen and the reversing happen. It could be in that system. | |
| Q: | And your opinion that Schindler did not properly maintain the door reopening device to code is based on the videotape? | |
| A: | Yes. | |

(Docket Entry No. 33, Ex. A, at 19, 21, 23, 27:24-25, 28:1, 29:12-25, 30:1-2, 31:1-6, 41:21-25, 42:1, 44:12-16, 45:14-19, 50:2-22).

Schindler's acknowledgment that the elevator conformed to the Code when she inspected it in November 2014 does not contradict her opinion based on viewing the video recording that the elevator violated the Code when it struck Gamino in December 2011.

Schindler responds by pointing to testimony from its own experts, Ernest Morrison and John Donnelly, that Gamino did not cross the threshold to activate the infrared sensor and that the elevator was operating properly. (Docket Entry No. 31-7, 31-9). Donnelly bases his opinion on the video recording, Morrison's testing of the doors two weeks after the incident, and the absence of adjustment or repair to the door system between the incident and Morrison's tests. (Docket Entry No. 31-9). According to Schindler, "[t]he video clip referenced in Donnelly's Affidavit demonstrates that Gamino did not cross the running clearance and break the [infrared] beam at the time the elevator door struck him," and the Code allows the door-reopening system to "continue to close during the electrical, mechanical, and inertial reaction time." (Docket Entry Nos. 31-2, at 7; 34, at 2; *see also* Docket Entry No. 31-5 (Video at 00:06-09)).

Gamino has submitted competent summary judgment evidence creating genuine fact disputes

material to determining whether the elevator door malfunctioned by operating in violation of the Code requirements and whether Schindler was negligent. The disputes include whether Gamino crossed the "light ray" when he backed into the elevator pulling the cart, whether the elevator-door reopening mechanism responded too slowly, and, if so, whether Schindler's negligence caused the elevator to function in this fashion. Given the conflicting expert opinions and a reasonable jury's ability to find support for either in the video recording of the incident, summary judgment is not appropriate.[1] *See Martin v. Homesite Grp., Inc.*, No. 3:06CV536-DPJ-JCS, 2008 WL 4000182, at *2 (S.D. Miss. 2008) (concluding that "genuine issues of material fact exist which preclude summary judgment on Plaintiff's claims for negligence" in part because "the parties present[ed] conflicting expert testimony as to the cause of the damage to the roof"); *Simpson v. Baronne Veterinary Clinic, Inc.*, 803 F. Supp. 602, 607 (S.D. Tex. 2011) (denying "the defendant's summary judgment motion regarding the plaintiffs' negligence claim because" the parties presented "conflicting expert testimony" about "the focal point of this case"); *see also Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013) (denying summary judgment where "the video [evidence] d[id] not so blatantly contradict the version of events told by [the plaintiff] that no reasonable jury could believe his version").

---

[1] Schindler also argues that summary judgment is appropriate because (1) there is no evidence of "any previous elevator malfunctions" and (2) Schindler complied with the "terms of [its] Maintenance Agreement, which sets out [its] responsibilities for performing maintenance on the elevator equipment." (Docket Entry No. 31-2, at 7, 8). Not so. Regardless of whether the elevator previously malfunctioned or Schindler complied with its contractual obligations, a reasonable jury could find that Schindler breached its duty of care to Gamino based on the video footage, Swett's expert report, and her deposition testimony.

## III.     Conclusion

Schindler's motion for summary judgment, (Docket Entry No. 31), is denied.

SIGNED on February 20, 2015, at Houston, Texas.

                                                                          _____
                                                                                     Lee H. Rosenthal
                                                                             United States District Judge